Meriel L. Darzen, Oregon State Bar (OSB) No. 113645
Email: meriel@crag.org
Ralph Bloemers, OSB No. 984172
Email: ralph@crag.org
Crag Law Center
3141 E Burnside Street
Portland, Oregon 97214
Phone: (503) 525-2725  Fax: (503) 296-5454
LEAD COUNSEL – *Applicants Pro Hac Vice*

*Attorneys for Plaintiffs Earth Island Institute, Greenpeace, Inc., and Sequoia ForestKeeper*

Daniel Galpern, OSB No. 061950
Law Offices of Daniel M. Galpern
2495 Hilyard St., Suite A
Eugene, Oregon 97405
Phone: (541)968-7164  Fax: (971)244-9035
Email: dan.galpern@gmail.com
*Applicant Pro HacVice*

*Attorney for Plaintiff James Hansen*

René P. Voss, California State Bar No. 255758
Natural Resources Law
15 Alderney Road
San Anselmo, CA 94960
Phone: (415) 446-9027  Fax: (267) 316-3414
Email: renepvoss@gmail.com
LOCAL COUNSEL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO OR OAKLAND DIVISION

| | |
|---|---|
| EARTH ISLAND INSTITUTE, SEQUOIA FORESTKEEPER, GREENPEACE INC., and JAMES HANSEN, | Case No.: 3:19-cv-5792 |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| KIMBERLY NASH in her official capacity as Director of Community Planning and Development, Department of Housing and Urban Development; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; JANICE | Administrative Procedure Act Case, 5 U.S.C. §§ 701 *et seq.* |

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 1

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

WADDELL, in her official capacity as Operations Branch Chief, California Department of Housing and Community Development; CALIFORNIA DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT; JASON KUIKEN, in his official capacity as Forest Supervisor for the Stanislaus National Forest; and UNITED STATES FOREST SERVICE,

Defendants.

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

**PRELIMINARY STATEMENT**

1.      In 2013, the Rim Fire burned approximately 257,000 acres across northern California, including public forestland managed by the United States Forest Service (the "Forest Service"). Five years later, the United States Department of Housing and Urban Development ("HUD") authorized the expenditure of tens of millions of dollars of disaster relief funds to be passed through the State of California and back to the Forest Service for a clearcut logging project on these newly regenerating public forestlands. HUD also approved funding for a new biomass power plant that would utilize the timber from the logging project as feedstock. HUD approved these funds through a "disaster relief" grant even though the proposed logging activities are outside of the scope of disaster relief. Using the HUD disaster relief funding, the Forest Service is currently logging newly regenerated forests that have been growing naturally after the fire.

2.      HUD's approval of the grant authorizing the expenditure of disaster relief funds is subject to the requirements of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, yet HUD failed to address or consider new information and changed circumstances on the ground as is required by NEPA. Instead, HUD accepted unchanged and outdated Environmental Impact Statements ("EISs") prepared by the Forest Service in 2014 and 2016.  In those original EISs, the Forest Service asserted that most of the forest proposed for logging would not regenerate naturally for several decades.  In 2018 and 2019, plaintiffs systematically field-checked the proposed logging units and documented extensive conifer regeneration at or above the levels identified in the EISs. Plaintiffs also documented the presence of wildlife and birds that were using the young regenerating forests.

3.      Plaintiffs presented this significant new information and changed circumstances to HUD, the State of California's Department of Housing and Community Development ("HCD") (the recipient of the funds), and to the Forest Service (collectively, the "agencies"), but the agencies refused to address or consider it, instead choosing to go forward with release of the funds. Clearcutting these naturally regenerating forests is not a permissible use of

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 3

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

Congressionally-allocated disaster relief funding, particularly where environmental review is incomplete.

4. Because the biomass power plant is interdependent with and connected to the logging projects, HUD had a duty to analyze the direct, indirect, and cumulative impacts of the biomass power plant in the same environmental analysis as the logging projects and it failed to do so.

5. This action seeks declaratory and injunctive relief under NEPA, HUD's regulations governing environmental review of HUD-funded projects (24 C.F.R. Part 58) and the Disaster Relief Appropriations Act of 2013, P.L. 113-2, 127 Stat. 4 ("Disaster Relief Act"). It is brought pursuant to the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. Plaintiffs challenge the actions of the HUD, HCD, and the Forest Service in releasing and utilizing the funds in reliance on the outdated and incorrect information contained in the EISs.

6. Plaintiffs seek: (1) a declaration that defendants HUD and HCD have violated NEPA and 24 C.F.R. Part 58 by failing to update, modify and supplement the environmental analyses and EISs for the proposed logging project and failing to analyze the impacts of the proposed biomass facility in the same EISs as the logging project; (2) a declaration that the Forest Service has violated NEPA by failing to supplement the 2014 and 2016 EISs; (3) a declaration that the proposed logging activities are not eligible to be funded with Disaster Relief Act funds; and (4) an injunction requiring return of the Disaster Relief Act funds, prohibiting use of those funds for logging, and barring defendants from permitting logging or otherwise proceeding with the logging project until they have demonstrated compliance with federal law.

7. Should plaintiffs prevail at any stage in this litigation, plaintiffs will seek an award of costs and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

## JURISDICTION

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346, as it involves the United States as a defendant, and 28 U.S.C. § 1331, as it presents a federal question because it arises under the laws of the United States, including the Administrative Procedure Act,

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 4

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

5 U.S.C. §§ 701 *et seq.,* and NEPA, 42 U.S.C. §§ 4321 *et seq.*  There is a present, actual, and justiciable controversy between the parties. The requested relief is proper under 28 U.S.C. § 2201 (declaratory relief) and § 2202 (injunctive relief), and 5 U.S.C §§ 705 & 706.

9.     Plaintiffs have exhausted their administrative remedies because they objected to the release of funds to HCD, and are otherwise not required to exhaust their administrative remedies.  Following plaintiffs' objection, HUD initially delayed release of the funds, but subsequently released the funds to HCD. HUD was presented with new information and changed circumstances and it has failed to comply with applicable law.  In the ordinary course, the challenged agency action is subject to this Court's review under 5 U.S.C. §§ 702, 704, and 706.

**VENUE**

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and Northern District of California Local Rule 3.2 (c) because the district serves "the county in which the action arises." A civil action arises in the county in which "a substantial part of the events or omissions which give rise to the claim occurred…" L.R. 3.2(c).  Defendant HUD violated NEPA and its own regulations by approving the release of Disaster Relief Act funds to the State of California without ensuring compliance with federal environmental law.  HUD has responsibility to administer the grant program by the statute that created the program, and HUD has the ultimate responsibility for compliance with NEPA. HUD's office that administers the grant is located in San Francisco. Venue is proper as plaintiffs' primary remedy is against HUD and includes the return of any Disaster Relief Act funding allocated towards logging in the Stanislaus National Forest until HUD, HCD and the Forest Service comply with NEPA, and HUD and HCD comply with 24 C.F.R. Part 58 and can demonstrate that the proposed activities are authorized by the Disaster Relief Act. Further, no real property is involved and plaintiffs Earth Island Institute and Greenpeace, Inc. have offices in the Northern District of California.

**INTRADISTRICT ASSIGNEMNT**

11.     Pursuant to L.R. 3-2(d), assignment of this matter to the San Francisco or Oakland Division of the Northern District of California is proper because defendant HUD's office is located in San Francisco.

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

**PARTIES**

12.     Plaintiff EARTH ISLAND INSTITUTE ("Earth Island") is a California non-profit corporation headquartered in Berkeley, California. Earth Island's mission is to develop and support projects that counteract threats to the biological and cultural diversity that sustains the environment.  Through education and activism, these projects promote the conservation, preservation and restoration of the earth.  One of these projects is the John Muir Project ("JMP")—whose mission is to protect all federal public forestlands from commercial exploitation that undermines and compromises science-based ecological management.  John Muir Project offices are in San Bernardino County, California. Earth Island is a membership organization with over 15,000 members in the U.S., over 3,000 of whom use and enjoy the National Forests of California for recreational, educational, aesthetic, spiritual, and other purposes.  Earth Island through its John Muir Project has a longstanding interest in protection of national forests.  Earth Island's John Muir Project and Earth Island members actively participate in governmental decision-making processes with respect to national forest lands in California and rely on information provided through the NEPA processes to increase the effectiveness of their participation.  Earth Island's members include individuals who regularly use and continue to use public lands within the Stanislaus National Forest including areas in the Rim Fire proposed for logging, in particular, for scientific study, recreational enjoyment, aesthetic beauty, and nature photography.  These members' interests have been and will continue to be irreparably harmed by the on-going and planned logging, as they will no longer be able to enjoy and study these areas in their naturally regenerating state, take nature photographs of the area in its natural state, or enjoy the beauty of the young forests in this area. Plaintiff Earth Island has no adequate remedy at law.

13.     Plaintiff SEQUOIA FORESTKEEPER is a non-profit corporation residing in Kernville, California.  Sequoia ForestKeeper's mission is to protect and restore the ecosystems of the Southern Sierra Nevada through monitoring, enforcement, education, and litigation.  Sequoia ForestKeeper's members use and continue to use the Stanislaus National Forest for activities such as hiking, bird and animal watching, aesthetic enjoyment, quiet

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 6

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1   contemplation, fishing, scientific study, and to improve their health, including the exact tracts of

2   the lands and waters that are now planned for logging as part of the FWHP logging

3   project.  These members' interests will be irreparably harmed by the planned logging, as they

4   will no longer be able to scientifically study these naturally recovering forested areas, take nature

5   photographs of the young forests emerging after the burn or enjoy the beauty of these naturally

6   recovering forests and its inhabitants. Sequoia ForestKeeper has no adequate remedy at law.

7       14.   GREENPEACE, INC. is a global, independent organization that uses peaceful

8   protest and creative communication to expose global environmental problems and promote

9   solutions that are essential to a green and peaceful future. Greenpeace, Inc. has offices in

10  Washington, D.C. and San Francisco. Greenpeace, Inc. works to address threats from global

11  warming and advocates for forest and ocean conservation. Greenpeace, Inc.'s members include

12  individuals who regularly use and continue to use public lands within the Stanislaus National

13  Forest including areas in the Rim Fire proposed for logging, in particular, for scientific study,

14  recreational enjoyment, aesthetic beauty, and nature photography.  These members' interests will

15  be irreparably harmed by the planned logging, as they will no longer be able to enjoy and study

16  these areas in their naturally regenerating state, take nature photographs of the area in its natural

17  states, or enjoy the beauty of the young forests in this area. Plaintiff Greenpeace, Inc. has no

18  adequate remedy at law.

19      15.   Plaintiff JAMES E. HANSEN is an Adjunct Professor at Columbia University's

20  Earth Institute, Director of the Climate Science, Awareness and Solutions program at the Earth

21  Institute, Columbia University, and the immediate past Director of the NASA Goddard Institute

22  for Space Studies. He is also a member of the United States National Academy of Sciences.  Dr.

23  Hansen has testified before the United States Senate and House of Representatives on many

24  occasions in support of efforts to reduce reliance on carbon-intense energy from fossil fuels and

25  rapidly transition to carbon-free energy. His training is in physics and astronomy, with early

26  research on the clouds of Venus.  Since the late 1970s, Dr. Hansen has focused his research on

27  Earth's climate, especially human-made climate change.  Most recently, Dr. Hansen has

28  dedicated significant effort towards outlining the actions that must be undertaken by

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 7

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

communities, states, the U.S. Government, and others, in order to preserve a viable climate

system for young people, future generations, and other life on Earth.  These include not only

phasing out additional fossil fuel emissions, but also drawing down excess atmospheric $CO_2$ via

improved agricultural and forestry practices – including reforestation and steps to improve soil

fertility and increase its carbon content.

16.     Members of the plaintiff organizations reside near and/or regularly visit the

Stanislaus National Forest, including the areas proposed to be logged.

17.     The plaintiff organizations have an organizational interest in the proper and

lawful management of the lands in the Stanislaus National Forest and the proper use of Disaster

Relief Act funding.

18.     Members of the plaintiff organizations hike, ski, snowshoe, fish, camp,

photograph scenery and wildlife, and engage in other vocational, scientific observation, and

recreational activities within the Stanislaus National Forest.  Members of the plaintiff

organizations derive recreational, inspirational, religious, scientific, and/or aesthetic benefit from

their activities within the Stanislaus National Forest.  Members of the plaintiff organizations and

their staff have firm plans to return to the areas scheduled to be logged using the disaster relief

funding and their enjoyment of these benefits, and the proposed logging projects will be

adversely affected and irreparably harmed by HUD, HCD and the Forest Service's disregard of

their statutory duties, pursuant to NEPA, 24 C.F.R. Part 58, the Disaster Relief Act and as

described below.

19.     The above-described recreational, inspirational, religious, scientific, and/or

aesthetic interests of the plaintiff organizations and their members will be adversely affected and

irreparably injured if defendants proceed with the approved logging activities using Disaster

Relief Act funding, unless the relief requested herein is granted.  These are actual, concrete

injuries caused by defendants' failure to comply with the NEPA, the HUD regulations, the

Disaster Relief Act and the APA, and the relief sought below would redress the injuries.

20.     In addition, the plaintiff organizations and their members have participated in

administrative actions to protect the Stanislaus National Forest from potentially damaging timber

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 8

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1  sales and other activities.  The plaintiff organizations and their members have also actively

2  participated in the public processes for the logging and biomass projects proposed and/or funded

3  by HUD, HCD and the Forest Service.

4     21. Defendant UNITED STATES DEPARTMENT OF HOUSING AND URBAN

5  DEVELOPMENT is responsible for administering the disaster relief funding appropriated by

6  Congress through the Disaster Relief Appropriations Act of 2013 (P.L. 113-2) ("Disaster Relief

7  Act").

8     22. Defendant KIMBERLY NASH is the Director of the Office of Community

9  Planning and Development for Region 9 of HUD, located in San Francisco County and is sued in

10  her official capacity. This office of HUD is responsible for administering the California grant

11  funding appropriated through the Disaster Relief Act.

12     23. Defendant CALIFORNIA DEPARTMENT OF HOUSING AND COMMUNITY

13  DEVELOPMENT is a California state agency. HCD is the recipient of the $70 million federal

14  grant discussed herein, awarded pursuant to the Disaster Relief Act. HCD is the responsible

15  entity as defined in 24 C.F.R. § 58.2.

16     24. Defendant JANICE WADDELL is the Operations Branch Chief for HCD's

17  Division of Financial Assistance. Defendant Waddell is the Certifying Officer for HCD, pursuant

18  to 24 C.F.R. § 58.13. Defendant Waddell is responsible for certifying that the proposed activities

19  to be funded with the Disaster Relief Act funding comply with federal environmental laws and is

20  sued in her official capacity.

21     25. The UNITED STATES FOREST SERVICE is the federal agency responsible for

22  managing and protecting the National Forest System of the United States.

23     26. Defendant JASON KUIKEN is the Forest Supervisor of the Stanislaus National

24  Forest and is responsible for its proper and lawful management and is sued in his official

25  capacity.

26     27. Defendants HUD and the Forest Service are agencies within the meaning of the

27  Administrative Procedure Act, 5 U.S.C § 551 *et seq.* HCD has assumed responsibility for

28  compliance with NEPA and other federal laws pursuant to 24 C.F.R. Part 58 and is therefore

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 9

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

properly subject to the federal Administrative Procedure Act as an agent of HUD.

**LEGAL BACKGROUND**

**National Environmental Policy Act and CEQ Regulations**

28.     NEPA is "our basic charter for protection of the environment." 40 C.F.R. § 1500.1(a).

29.     NEPA requires that federal agencies prepare an EIS for any major federal action that may significantly affect the quality of the human environment. 42 U.S.C § 4332(C), 40 C.F.R. § 1508.18(b)(4).

30.     To comply with NEPA, an agency must take a "hard look" at the direct, indirect and cumulative environmental impacts of a proposed action. 40 C.F.R. § 1502.16.

31.     Agencies must also consider cumulative and connected actions, including those that are interdependent parts of a larger action and depend on the larger action for their justification, in a single EIS. 40 C.F.R. § 1508.25.

32.     The NEPA documentation must provide the decisionmaker and the public with adequate information, evidence, and analysis to fully assess the potential impacts of the proposed action before decisions are made. 40 C.F.R. § 1500.1(b).

33.     Agencies are required to integrate the NEPA process with other planning at the earliest possible time to ensure that planning and decisions reflect environmental values. 40 C.F.R. § 1501.2.

34.     An agency may adopt an EIS prepared by another federal agency, however it must comply with the standards of an adequate statement under the CEQ regulations and the adopting agency must undertake an independent review of the other agency's EIS before adopting it and "conclude that its comments and suggestions have been satisfied." 40 C.F.R. § 1506.3.

35.     CEQ regulations impose a duty on federal agencies to supplement their environmental analysis if "the agency makes substantial changes in the proposed action that are relevant to environmental concerns" or "there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1).

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

**HUD's Environmental Regulations (24 C.F.R. Part 58)**

36.     Under the Housing and Community Development Act of 1974, HUD and recipients of HUD funding must account for and analyze the environmental impacts of projects and activities that receive financial assistance from HUD. 42 U.S.C § 5304.

37.     The regulations governing this environmental review are found in 24 C.F.R. Part 58. The regulations in that section apply to the Disaster Relief Act funding and activities funded with that funding. 24 C.F.R. § 58.1(b)(1).

38.     Under 24 C.F.R. Part 58, the "responsible entity" is the recipient of HUD funding. Responsible entities are responsible for environmental review, decision-making and action that would otherwise apply to HUD under NEPA. 24 C.F.R. §§ 58.4, 58.5, 58.10. The responsible entity must certify that it has complied with NEPA and the CEQ regulations (40 C.F.R. Parts 1500 through 1508) and other applicable environmental laws. 24 C.F.R. §§ 58.5, 58.10.

39.     The "Certifying Officer" for the responsible entity is responsible for all of the requirements of Section 102 of NEPA and the related provisions in 40 C.F.R. Parts 1500 through 1508, as well as 24 C.F.R. Part 58. 24 C.F.R. § 58.13. The Certifying Officer is required to represent the responsible entity and is subject to the jurisdiction of the Federal courts. 24 C.F.R. § 58.13.

40.     "Environmental review" for the purposes of 24 C.F.R. Part 58 is "all of the actions that a responsible entity must take to determine compliance with [24 C.F.R. Part 58]." 24 C.F.R. § 58.30. This includes ensuring NEPA compliance for actions that are funded by HUD as well as those that may not be funded by HUD but are aggregated by the responsible entity in accordance with 24 C.F.R. 58.32. *Id.*

41.     The responsible entity must "group together and evaluate as a single project" all individual activities which are related on a geographic or functional basis so that the responsible entity can adequately address and analyze, in a single environmental review, "the separate and combined impacts of activities that are similar, connected and closely related, or that are dependent upon other activities and actions," and consider reasonable alternative actions. 24 C.F.R. § 58.32(c).

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

42.     When a recipient's planning and program development provide for activities to be implemented over more than two years, the environmental review should consider "the relationship among all component activities of the multi-year project, regardless of the source of funds and address and evaluate their cumulative environmental effects." 24 C.F.R. § 58.32(d).

43.     The responsible entity must reevaluate and update its environmental findings (including an adopted EIS) when the project changes in nature, magnitude, or extent, including adding new activities not anticipated in the original scope of the project, or when there are new circumstances and environmental conditions that affect the project or its impacts or the recipient proposes an alternative not considered in the original finding. 24 C.F.R. §§ 58.52, 58.53, 58.60.

44.     HUD, and by extension, HCD, as the Responsible Entity, have a continuing duty to ensure compliance with federal environmental laws including NEPA procedures and including the duty to supplement an EIS when presented with significant new information.

### The Disaster Relief Appropriations Act of 2013

45.     The Disaster Relief Appropriations Act of 2013 (P.L.113-2, 127 Stat. 4) ("the Disaster Relief Act") was enacted following Hurricane Sandy in order to provide funding for disaster recovery efforts in "the most impacted and distressed areas" resulting from major disasters declared as such pursuant to the Stafford Act (42 U.S.C §§ 5121 *et seq.*).

46.     Funds were allocated through this Act to HUD's Community Development Block Grant (CDBG) program for "necessary expenses related to disaster relief, long-term recovery, restoration of infrastructure and housing, and economic revitalization."

47.     Activities that may be financed by Disaster Relief Act funds are those authorized by the Housing and Community Development Act of 1974 (42 U.S.C 5301 et seq), and include housing restoration and development, land acquisition and local government planning assistance but do not include general government activities.

### The Administrative Procedures Act

48.     The APA confers a right of judicial review on any person adversely affected by agency action. 5 U.S.C. § 702. Plaintiffs' claims are reviewed under the APA.

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 12

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

49.     "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

50.     Upon review, a court shall hold unlawful and set aside agency actions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with and/or without observance of procedure required by law. 5 U.S.C. § 706(2).

51.     Upon review, a court shall set aside agency action that is in excess of statutory authority or limitation, or short of statutory right. *Id.*

52.     A court shall compel agency action unlawfully withheld or unreasonably delayed in light of an agency's failure to act. 5 U.S.C. § 706(1).

## SUMMARY OF FACTS

### *2014 and 2016 Forest Service Environmental Impact Statements*

53.     In 2013, the Rim Fire burned more than 250,000 acres in California in the Stanislaus National Forest and a portion of Yosemite National Park. President Barack Obama declared the areas impacted by the Rim Fire a national disaster.

54.     Following the Rim Fire, the Forest Service proposed two projects that included logging and reforestation work in the Stanislaus National Forest. These projects were entitled "Rim Fire Recovery" and "Rim Fire Reforestation." The Forest Service completed environmental impact statements for these two projects, which were issued in 2014 and 2016, respectively.

55.     The 2014 Recovery EIS stated that the intended purpose of the project was to: "restore the forest at a landscape scale; conserve ecological structures, processes, and functions that are desirable and sustainable for future forested conditions; bring areas back to a more historic heterogeneous structure where fire complements and sustains the system instead of destroying it; restore ecosystem function, process, and resiliency by addressing issues related to vegetative composition and structure, forest health, fuels, hardwood and wildlife habitat improvement, and socio-economic objectives."

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 13

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

56.     The 2016 Reforestation EIS stated that the project's proposed purpose was to "[c]reate a fire resilient mixed conifer forest" and that "[n]atural conifer regeneration cannot be counted on within large portions of the Rim Fire."

57.     In August 2014 and August 2016, respectively, the Forest Service issued Records of Decision (RODs) for the 2014 and 2016 EISs.

58.     Since the 2016 Record of Decision was released the Forest Service has not collected updated plot-level data for the areas proposed for logging to determine to what extent the forest was regenerating on its own, and specifically the current levels of conifer regeneration in the Rim Fire.

59.     In the period between when the Forest Service published the 2014 EIS and when HUD released the disaster relief funds, plaintiffs visited the project area on multiple occasions and documented extensive conifer regeneration, habitat creation, and wildlife presence.

60.     The habitat created in the newly regenerating post-fire landscape (known as "snag forest habitat") is significant ecologically and serves as a refuge for wildlife species that depend on the features of the habitat, including standing dead trees intermixed with young conifers and flowering shrubs.

61.     Clearcutting and application of herbicide damages and degrades this important habitat, kills most of the natural forest regrowth, and sets back natural regeneration of the forest, rather than restoring it.

### Disaster Relief Act Funding and California's Funding Award

62.     The National Disaster Resilience Competition (NDRC) grant is a competitive grant sourced from funds allocated by the Disaster Relief Appropriations Act. This 2013 law made $16 billion available for necessary expenses related to disaster relief, long-term recovery, restoration of infrastructure and housing, and economic revitalization in the most impacted and distressed areas resulting from major disasters declared pursuant to the Stafford Act (42 U.S.C 5121 et seq).

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 14

*Crag Law Center
3141 E Burnside Street
Portland, Oregon 97214
Tel. 503-525-2725*

63.     Award of the NDRC grant funds was competitive and had a statutory focus on determining and meeting the unmet needs of vulnerable lower-income people and communities, and targeting the most impacted and distressed areas.

64.     In 2016, HUD awarded California $70,359,459 of Disaster Relief Act funds to assist with recovery efforts in Tuolumne County. The funds came through the NDRC grant funding process administered by HUD.

65.     The California NDRC grant application, submitted by HCD, was entitled the Community Watershed Resilience Program and was divided into three components: the Forest and Watershed Health Program ("FWHP logging project"), the Biomass Utilization Facility ("biomass power plant"), and the Community Resiliency Center(s). These three parts and their included actions are interdependent, connected actions that are each part of the larger program developed by the state.

66.     The FWHP logging project component of the grant involves passing approximately $28 million back to the Federal Government and other entities to fund some of the activities contemplated in the 2014 and 2016 EISs, including but not limited to logging, herbicide spraying, and tree planting on approximately 25,000 acres (about 39 square miles) within the Rim Fire area of the Stanislaus National Forest.

67.     The FWHP logging project is targeted to logging trees from the forest for biomass energy production. In contrast, the original 2014 and 2016 EISs included post-fire logging for dimensional lumber.

68.     The logging funded with the Disaster Relief Act funds consists of the clearcutting of all trees, both living and dead, as well as nearly all understory plants.

69.     The trees and vegetation that are being cut down are being piled and burned onsite or chipped and trucked away to be incinerated in a power plant.

### HCD's Environmental Review of the FWHP Logging Project

70.     The responsible entity for the Disaster Relief Act grant to California is HCD. California, via HCD, assumed the status of the Federal official under NEPA as well as 24 C.F.R. § 58.5.

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

71.     HCD engaged in an environmental review of the FWHP logging project as part of its role as the responsible entity. HCD did not produce its own environmental impact statements analyzing the proposed activities. HCD issued Records of Decision adopting the two EISs to satisfy its responsibilities under 24 C.F.R. Part 58 in order to pass the Disaster Relief Act funds to the Forest Service to pay for logging on 14,897 acres (Recovery ROD) and reforestation on 15,217 (mostly overlapping) acres (Reforestation ROD). The HCD RODs were issued on October 5, 2017.

72.     The 2014 and 2016 EISs adopted by HCD were based on analysis and data gathered in the Rim Fire area in 2014 and 2015. HCD did not update the EISs, and also did not undertake any additional environmental review before it adopted them.

73.     In June 2017, while HCD was considering adopting the 2014 and 2016 EISs, plaintiff Earth Island and other environmental organizations wrote to HCD requesting that it withdraw its proposal to adopt the 2014 and 2016 EISs and withdraw HCD's request for HUD funding to log in the Rim Fire area because:

    a)  The EISs were factually incorrect and outdated, as they failed to disclose the extensive natural conifer regeneration in the Rim Fire area and failed to analyze the impacts of logging on this young emerging (early seral) forest that provided habitat for multiple species of wildlife – including great grey owls, black-backed woodpeckers, and California spotted owls.

    b)  The EISs failed to analyze the environmental impacts of logging for biomass energy production, which involves clearcutting vegetation of all sizes both live and dead, rather than commercial logging of larger dead trees for dimensional lumber. These impacts include but are not limited to impacts on wildlife habitat and increased greenhouse gas emissions from incinerating logs and woody material of all sizes, as well as from incinerating young, naturally regenerating conifer trees, which was not contemplated or analyzed in the 2014 or 2016 EISs.

74.     In their letter to HCD, Plaintiffs presented specific data and information from comprehensive and systematic surveys of the units in the project area documenting the changed conditions in the project area, including photographs and regeneration data for the same areas surveyed years earlier by the Forest Service within the project area.

75.     HCD failed to respond to the letter or undertake any further environmental analysis of the Rim Fire logging project.

76.     In October 2017, HCD filed a Request for Release of Funds (RROF) with HUD for $28 million of disaster relief funds from the Disaster Relief Act.

77.     Plaintiff Earth Island Institute, through its John Muir Project (JMP), objected to the release of funds on October 23, 2017 ("Objection"). The objections were based on the following reasons:

c)  circumstances in the project area have changed significantly and the area now has significant conifer regeneration and newly created habitat that would be destroyed/degraded by the planned logging;

d)  the climate and greenhouse gas impacts of the logging occurring is different than was analyzed in the original EISs, especially in the current or short-term timeframe that is critical in the climate crisis. The felling and removal all trees, regardless of size and regardless of whether they are live or dead—including the young, naturally-regenerating conifer forests in these logging units—for these trees to be burned as biomass or pile burned onsite is substantially different than the felling and processing of trees for dimensional lumber (which retains a larger share of its carbon);

e)  post-fire logging kills most of the natural post-fire conifer regeneration that occurs in the Rim fire, as conifer seedlings and saplings are crushed and pulverized under the treads of ground-based logging machinery;

f)  the impacts to understory-nesting bird species from removal and incineration of the young, naturally-regenerating conifer forest and mature shrub habitat is substantially different than the felling and processing of trees for dimensional

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 17

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    lumber, which was assumed in the 2014 and 2016 EISs to be mostly

2    completed by 2016, when there was less understory growth.

3    78.   HUD acknowledged the objection and requested that HCD respond to the

4    substantive objections before funds could be released.

5    79.   In a January 11, 2018 letter to HUD, HCD denied that circumstances and

6    conditions had changed significantly since the 2014 and 2016 EISs were completed.

7    80.   HCD also claimed that the activities proposed in the California Disaster Act

8    Funding grant application that it proposed to conduct using the HUD funds are the same as those

9    analyzed in the 2014 and 2016 EISs.

10   81.   HCD declined to prepare a supplemental EIS.

11   82.   On February 18, 2018, HUD denied the Objection and approved the RROF,

12   releasing the funds to HCD. Upon information and belief, these funds were then passed to the

13   Forest Service.

14   83.   Plaintiffs and HCD officials visited the project area on May 30, 2019 (the "site

15   visit"). The Forest Service also attended the site visit.

16   84.   On the site visit, HCD and Forest Service officials viewed natural new tree

17   growth in the forests burned by the Rim Fire, and which are planned for logging.

18   85.   Plaintiffs documented growth and tree stocking at or above levels identified in the

19   EISs to be achieved by replanting.

20   86.   Plaintiffs again wrote to HUD on August 14, 2019.

21   87.   The August 14, 2019, letter included documentation of additional natural recovery

22   of the burned areas.

23   88.   The August 14, 2019, letter included new studies published by Forest Service

24   scientists that contradicted the need for replanting in most of post-fire areas, as is proposed in the

25   FWHP logging project that HUD is funding with Disaster Relief Act appropriations.

26   89.   The August 14, 2019, letter included a new study and findings documenting the

27   toxic and carcinogenic effects of the herbicide glyphosate, which the Forest Service plans to

28

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 18

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1   utilize in the Rim Fire area to suppress vegetation that might compete with trees artificially

2   planted after logging.

3        90.     Upon information and belief, Defendants are implementing the FWHP logging

4   project and are currently conducting logging operations within the project area.

5        91.     A second part of the $70 million Disaster Relief Act funding grant is allocated to

6   the biomass power plant. This portion of the grant includes construction of a "wood products and

7   energy campus" that may be either a power plant or a wood processing facility or both. Products

8   produced at the facility could include posts, pellets, lumber, mulch, particle board, liquid fuel or

9   electricity.

10        92.     No environmental review has been completed for the biomass power plant's

11   impacts on wildlife habitat, or greenhouse gas emissions and the climate crisis, nor has it been

12   included in any environmental review for the FWHP logging project.

**CAUSES OF ACTION**

**Failure to Reevaluate, Modify and Supplement the Environmental Review When Presented
With Significant New Information and Changed Circumstances**

**(Violation of NEPA, HUD Regulations, and the APA)**

**(Against HUD and HCD)**

17        93.     Plaintiffs repeat and hereby incorporate by reference the allegations contained in

18   the above paragraphs.

19        94.     HUD's regulations governing environmental review for HUD-funded projects (24

20   C.F.R. Part 58) require HUD and the responsible entity, here, HCD, as an agent of HUD, to

21   ensure that projects financed by Disaster Relief Act funding, including the $70 million funding

22   awarded to California, comply with NEPA and the HUD regulations. 24 C.F.R. § 58.10.

23        95.     HCD did not prepare its own environmental analysis of the activities to be

24   financed by the Disaster Relief Act funding. Instead, it adopted unchanged the Forest Service's

25   2014 and 2016 EISs for the Rim Fire Recovery and Reforestation projects as its analysis for the

26   FWHP logging project.

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 19

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

96.     Under NEPA, an agency must prepare a supplement to an EIS if the agency makes substantial changes to the proposed action that are relevant to environmental concerns or if there are significant new circumstances or information relevant to the environmental concerns. 40 C.F.R. § 1502.9(c).

97.     Under 24 C.F.R. Part 58, the responsible entity must reevaluate its environmental findings, whether adopted or original to the agency, when: 1) the recipient proposes substantial changes to the nature, magnitude, or extent of the project, including adding new activities not anticipated in the original scope of the project; or 2) there are new circumstances and environmental conditions which may affect the project or have a bearing on its impact, such as concealed or unexpected conditions discovered during implementation or activity which is proposed to be continued. 24 C.F.R. §§ 58.47, 58.52, 58.53. Similarly, if the responsible entity adopts another agency's EIS, it must modify the EIS to adapt to the particular environmental conditions and circumstances if these are different than the project reviewed in the adopted EIS. 24 C.F.R. § 58.52.

98.     There are significant changed circumstances and new information relevant to the environmental concerns and bearing on the proposed FWHP logging project and its impacts, including but not limited to extensive conifer regeneration and early seral "snag forest habitat" that will be degraded and/or destroyed by the logging of these sensitive burned areas, natural regeneration, and the impacts of applying herbicide across the landscape.

99.     There are substantial changes between the nature and magnitude of the logging proposed under the EISs, and the biomass logging being implemented pursuant to the FWHP logging project. While the former contemplated post-fire logging of large, dead trees for dimensional lumber, the latter is targeted toward removing and burning trees of all sizes, both live and dead, and including the young, naturally-regenerating forest, for biomass energy production, which will release significant quantities of greenhouse gas emissions, the effects of which were not previously disclosed in the 2014 or 2016 EISs.

100.    HUD and HCD have a continuing duty to ensure compliance with NEPA procedures, including the duty to supplement an EIS when presented with significant new

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

information. HUD and HCD have failed to update their environmental analyses and have failed to prepare a supplemental EIS addressing the significant new information, changed circumstances, and substantial changes to the actions proposed in the 2014 and 2016 EISs.

101.    HUD and HCD have a duty to revise and modify an adopted EIS if the environmental conditions and circumstances are different than the project reviewed in the adopted EIS. HUD and HCD have failed to modify the 2014 and 2016 EISs based on the significant new information, changed circumstances, and substantial changes to actions proposed in the Recovery and Reforestation EISs.

102.    HUD and HCD have a duty to reevaluate and update their environmental findings with respect to new circumstances and environmental conditions that affect the project or have a bearing on its impact. HUD and HCD failed to reevaluate and update the Recovery and Reforestation EISs based on the new circumstances and environmental conditions set forth above that affect the project and bear on its impacts.

103.    HUD and HCD's failure to comply with NEPA and its implementing regulations, and the HUD regulations as set forth above is arbitrary and capricious and not in accordance with law in violation of 5 U.S.C. § 706(2)(A). In the alternative HUD and HCD's inaction when confronted with significant new circumstances and information as set forth above constitutes unlawful failure to act in violation of 5 U.S.C. § 706(1).

**SECOND CLAIM FOR RELIEF**

**Failure to aggregate and analyze together logging activities and the biomass facility.**

**(Violation of NEPA, HUD Regulations and the APA)**

**(Against HUD and HCD)**

104.    Plaintiffs repeat and hereby incorporate by reference the allegations contained in the above paragraphs.

105.    The responsible entity must "group together and evaluate as a single project" all individual activities which are related on a geographic or functional basis so that the responsible entity can adequately address and analyze, in a single environmental review, "the separate and combined impacts of activities that are similar, connected and closely related, or that are

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 21

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

1    dependent upon other activities and actions," and consider reasonable alternative actions. 24

2    C.F.R. § 58.32(c).

3          106.    When a recipient's planning and program development provide for activities to be

4    implemented over more than two years, the environmental review should consider "the

5    relationship among all component activities of the multi-year project, regardless of the source of

6    funds and address and evaluate their cumulative environmental effects." 24 C.F.R. § 58.32(d).

7          107.    The construction of one or several biomass power plants is presented in the grant

8    documents as another "pillar" of the larger California grant proposal to HUD alongside the

9    FWHP logging project.

10         108.    The construction and operation of the biomass power plant(s) may significantly

11   affect the quality of the human environment by impacting air quality, increasing carbon

12   emissions, and degrading water quality and wildlife habitat.

13         109.    The FWHP logging project and the construction of the biomass facility are

14   presented as connected and interdependent actions in California's grant application documents.

15         110.    The biomass power plant and the FWHP logging project are related on a

16   geographic basis for the purposes of the aggregation requirement in 24 C.F.R. § 58.32(a) because

17   the logging project and the biomass power plant construction will both occur in the vicinity of

18   the Rim Fire and in Tuolumne County, California.

19         111.    California's planning and program development for its use of Disaster Relief Act

20   funding provides for the FWHP logging project activities and the biomass power plant

21   development to occur over two or more years.

22         112.    HUD and HCD failed to consider, address, and evaluate the cumulative

23   environmental effects of these two related and interdependent components of California's

24   Disaster Relief Act grant in the same environmental analysis as required by 24 C.F.R. §§ 58.30,

25   58.32 and 40 C.F.R. 1508.25.

26         113.    HUD and HCD adopted unchanged the Forest Service's 2014 and 2016 EISs to

27   satisfy their duties under NEPA and 24 C.F.R. Part 58 regulations. The 2014 and 2016 EISs do

28   not disclose or analyze the impacts of the two components together or cumulatively.

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 22

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

114.    HUD and HCD failed to comply with the HUD regulations and NEPA because they failed to take the requisite hard look at the impacts of FWHP logging project, particularly the direct, indirect, and cumulative impacts associated with developing and utilizing the biomass power plant, which is a reasonably foreseeable future action.

115.    Defendants HUD and HCD's failure to aggregate and adequately analyze the proposed FWHP logging project and the biomass power plant in the same EIS as required by 24 C.F.R. Part 58, and the National Environmental Policy Act (42 U.S.C § 4332) and the CEQ Regulations (40 C.F.R. Part 1500) is arbitrary, capricious and not in accordance with law in violation of 5 U.S.C. § 706(2)(A).

116.    The decision to adopt the Forest Service's earlier EISs without disclosing any additional information regarding the direct, indirect or cumulative impacts from the development of the biomass power plant is arbitrary, capricious and not in accordance with law, including but not limited to 24 C.F.R. Part 58 and NEPA and its implementing regulations. In the alternative, Defendants' inaction as set forth above constitutes unlawful failure to act in violation of 5 U.S.C. § 706(1).

## THIRD CLAIM FOR RELIEF

**Failure to Supplement the Environmental Analysis When Presented With Significant New Information and Changed Circumstances**

**(Violation of NEPA and the APA)**

**(Against the Forest Service)**

117.    Plaintiffs repeat and hereby incorporate by reference the allegations contained in the above paragraphs.

118.    Under NEPA, an agency must prepare a supplement to an FEIS if the agency makes substantial changes to the proposed action that are relevant to environmental concerns or if there are significant new circumstances or information relevant to the environmental concerns. 40 C.F.R. § 1502.9(c).

119.    Using Disaster Relief Act funds, the Forest Service is implementing the FWHP logging project pursuant to the 2014 and 2016 EISs and RODs.

120.     There are significant changed circumstances and new information relevant to the environmental concerns and bearing on the proposed action and its impacts, including but not limited to documentation of the extensive conifer regeneration and snag forest habitat that will be degraded and/or destroyed by the logging of these sensitive burned areas, new information about the natural regeneration, and the impacts to human health of applying glyphosate across the landscape.

121.     There are substantial changes between the nature and magnitude of the logging proposed under the 2014 and 2016 EISs, and the logging being implemented pursuant to the FWHP logging project. While the former contemplated post-fire logging of large, dead trees for dimensional lumber, the latter is targeted toward removing and burning trees of all sizes, both live and dead, including the young, naturally-regenerating forest, for biomass energy production.

122.     The Forest Service has failed to update its environmental analyses and has failed to prepare a supplemental EIS addressing the significant new information, changed circumstances, and substantial changes to the proposed action.

123.     The Forest Service's inaction as set forth above constitutes unlawful failure to act in violation of 5 U.S.C. § 706(1). To the extent the Forest Service has made an affirmative decision to not supplement its NEPA analyses, that decision is arbitrary, capricious, or otherwise not in accordance with law, or without observance of procedure required by law, in violation of 5 U.S.C 706(2)(a).

## FOURTH CLAIM FOR RELIEF

### Improper Use of Funds

### (Violation of the Disaster Relief Appropriations Act of 2013 and the APA)

### (Against HUD and HCD)

124.     The Disaster Relief Appropriations Act of 2013 (P.L.113-2, 127 Stat. 4) provides that funding appropriated by Congress for the Community Development Fund may be used for "necessary expenses related to disaster relief, long-term recovery, restoration of infrastructure and housing, and economic revitalization…for activities authorized under title I of the Housing and Community Development Act of 1974 (42 U.S.C. 5301 et seq.)."

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 24

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

125.     Title I, Section 105 of the Housing and Community Development Act of 1974 (42 U.S.C § 5305) sets forth activities that are eligible to be paid for with Disaster Relief Act funds. These activities include housing restoration and development, land acquisition and local government planning assistance but do not include general government expenses or operating and maintenance expenses.

126.     Logging and then burning trees in a biomass facility from public lands, including the FWHP logging project and the logging activities occurring on the Stanislaus National Forest using Disaster Relief Act funds authorized by HUD, are not eligible activities under either the Housing and Community Development Act of 1974 or the Disaster Relief Appropriations Act of 2013.

127.     Logging young forests that have naturally re-established after a fire and then replanting the disturbed land with the same species of trees such as is proposed in the FWHP is not an eligible use of Disaster Relief Act funds.

128.     HUD's actions awarding California $28 million for the FWHP logging project and then authorizing and releasing those funds for the FWHP logging project is arbitrary and capricious and not in accordance with law, or in the alternative, is in excess of statutory authority or short of statutory right.

## RELIEF REQUESTED

WHEREFORE, the plaintiffs respectfully request the following relief from this Court:

1.     Declare that defendants HUD and HCD have violated NEPA and 24 C.F.R. Part 58 by failing to modify, update, and supplement the EISs to address the significant new information, changed circumstances, and changes to the action.

2.     Declare that defendants HUD and HCD have violated NEPA and 24 C.F.R. Part 58 by failing to aggregate and analyze together in a single EIS the FWHP logging project and the biomass power plant and/or failing to take a hard look at the direct, indirect and cumulative impacts of the FWHP logging project and the biomass plants;

3.     Declare that use of Disaster Relief Act funds for the FWHP logging project and/or the biomass power plant is unlawful because defendants HUD and HCD have failed to

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 25

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

comply with NEPA and 24 C.F.R. Part 58.

4.    Declare that the Forest Service violated NEPA by failing to modify, update, and supplement the 2014 and 2016 EISs to address the significant new information, changed circumstances and changes to the action.

5.    Declare that the activities proposed in the FWHP part of California's NDRC grant application are not eligible for funding with Disaster Relief Act funds, HUD's decision to award $28 million in grants funds to California for these activities is unlawful, and the release of funds to HCD is unlawful.

6.    Issue an injunction vacating the HUD decision granting $28 million to California for the FWHP and the HUD decision to release those funds to HCD, vacating the HCD RODs and ordering HCD to return those funds to HUD.

7.    Issue an injunction ordering defendants to cease all logging activities and development of the biomass power plant that is being funded with the disaster relief funds until defendants HUD and HCD comply with NEPA and 24 C.F.R. Part 58.

8.    Issue an injunction ordering the Forest Service to cease all logging that is being funded with disaster relief funds until it complies with NEPA.

9.    Award to plaintiffs costs, including expenses, expert witness fees, and reasonable attorney fees under applicable law; and

10.   Grant plaintiffs such further relief as may seem to this Court to be just, proper, and equitable.

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

DATED this 16th day of September, 2019.

_____
René Voss, Cal. Bar No. 255758
Natural Resources Law

Meriel L. Darzen, OSB No. 113645
*Applicant, Pro Hac Vice*
Ralph Bloemers, OSB No. 984172
*Applicant, Pro Hac Vice*
Crag Law Center

Daniel Galpern, OSB No. 061950
*Applicant, Pro Hac Vice*
Law Offices of Daniel M. Galpern

*Attorneys for Plaintiffs*

Case No. 3:19-cv-5792 - COMPLAINT FOR DECLARATORY AND
AND INJUNCTIVE RELIEF - 27

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*